HAZEL CARPER *v.* MONTGOMERY WARD & COMPANY

(No. 9004)

Submitted May 8, 1940.   Decided May 21, 1940.

*Myron B. Hymes* and *Steptoe & Johnson,* for appellant.
*U. G. Young, Jr.,* and *James H. Coleman, Jr.,* for appellee.

HATCHER, JUDGE:

In September, 1936, plaintiff purchased from defendant a hot air system complete, including a coal burning furnace, air conduits and registers, and paid defendant to install the same in her home. Defendant, in writing, guaranteed the furnace to be free from defects in material and workmanship and to give satisfactory service when installed and used according to defendant's instructions; and further guaranteed "upon request and without charge to make adjustments and repairs to said system which become necessary * * * during the first year after purchase is made, where said adjustments * * * are required through any fault of" defendant.

Defendant promptly installed the system and gave instructions for its use. It was satisfactory until cold weather came in December, and a hot fire was kept in the furnace, when, according to plaintiff and her husband, the room farthest from the furnace was not heated, and the floors immediately around the kitchen and dining room registers became so hot, one could not walk on them "in stocking feet." Those registers were on opposite sides of the division wall between the rooms, and were the ones nearest the furnace. Plaintiff and Mr. Carper also testified that they notified defendant of these mal-adjustments; that it sent the mechanic who installed the system to see about them; that he made some examination of the air pipes, said he couldn't understand why a room failed to heat, and assured them there was no danger of the house catching fire in the heated woodwork around the registers; and that afterwards the floors there continued to become hot whenever a hot fire was in the furnace. On a very cold morning the following January the house caught fire causing plaintiff much property damage, for a part of which she recovered a judgment against defendant on the ground that the system was not properly installed.

The hot air capacity of the furnace was 550 cubic inches; the hot air outtake 315; the cold air intake 314. The unutilized air in the furnace could "get out only so

fast", and became abnormally hot. The pipes leading to the register metal boxes, as well as the boxes, were wrapped with 1/32 inch of asbestos paper, admittedly, however, to prevent the loss of heat by radiation, and not to protect the woodwork from heat. The boxes under the kitchen and dining room registers rested on a wooden sill, were between wooden joists and attached on one side thereto, and cleared the wooden floors above by 1½ inches. The pipes leading to these boxes had a much larger air capacity than the boxes and according to competent testimony this caused the hot air to "pile up" in the pipes and become "exceedingly hot" where it entered the boxes. The weight of evidence establishes that the fire started in the immediate vicinity of the boxes. Mr. Carper testified, without contradiction, that he had followed defendant's instructions in firing the furnace and that he built up no larger fire in the furnace the morning the house caught than he had on other cold mornings. The furnace was not warped by heat. There is evidence pro and con whether defendant's manner of installing the system was inherently dangerous. Plaintiff's position is that overheated pipes and boxes caused the fire; defendant's that an overheated furnace caused it. The jury adopted plaintiff's position; there is ample evidence to support it.

Defendant's brief charges that two of plaintiff's witnesses who gave expert opinions on what caused the fire were not qualified to do so. One of the witnesses held a degree of mechanical-electrical engineer from West Virginia University; had been an electrical inspector for the State of West Virginia nine years, during which he had aided the fire marshal to investigate fires; had pursued the same line of work in Kentucky for six years; and had made a study of how to lessen fire risks in buildings. He placed great reliance upon the standard requirements of the National Board of Fire Underwriters; but did not say, as the brief alleges, that any installation of a hot air system not meeting such requirements was dangerous, nor did he admit, as the brief claims, that he knew noth-

ing of the installation of heating systems except what he had learned from those requirements. On the contrary, he denied that limitation, saying "I have learned a lot by inspection." We are of opinion that his experience and learning qualified him to testify as an expert. The brief complains that two diagrams relating to the furnace, drawn by him, were permitted to go to the jury. Their admission, however, was only for the purpose of illustrating his testimony, and was not erroneous. The other witness testified he had been a contractor and builder for thirty years, had rebuilt a number of houses damaged by fire, and had repaired plaintiff's house after this fire. Cross-examination tended to restrict his knowledge of hot air heating systems. But his opinion as an expert had been expressed in his examination in chief, when only a general objection was interposed, and after the cross-examination no motion to exclude was made. We are of opinion that the admission of his theory at the time and under the circumstances was not error. *State* v. *John*, 103 W. Va. 148, 136 S. E. 842; *Oil Service Co.* v. *Surety Co.*, 105 W. Va. 130, 133-4, 141 S. E. 626; Jones Comm. Ev. (2nd Ed.), section 2519.

A witness of defendant was not permitted to testify that another furnace similiar to plaintiff's and similarly installed had gotten so hot it warped without igniting any woodwork. The brief lists this as error. The witness did not say that the other furnace generated more hot air than the pipes could take as did plaintiff's, nor that the wood contacted by the other system was of the same kind as plaintiffs; nor that the other wood had been subjected to heat for a period similiar to that of plaintiff's. In the absence of those details it was not error to exclude the testimony.

Defendant proved by laboratory hot air tests on a piece of well seasoned white pine, that it charred at 572° F. and flamed at 752° F. The brief contends that since the temperature of the air entering the pipes near the first register should have been, theoretically, 140° F., the fire could not possibly have been caused by the air conduits.

The brief overlooks the evidence (a) that this furnace generated a temperature of around 600° F. (in fact is called "600 degree furnace",) that while the air would not acquire that temperature in passing through the furnace if all the air in the heat box was utilized, yet when this was not done, that the residue became superheated; and (b) that "heat disintegrates wood * * * the molecules, the loose parts of the wood become dry and very pointed and rough and stick out", and if the heat be applied long enough to wood its "flashing point would be reduced until it could catch fire very easily" if close enough to hot metal. Since there is no evidence of the actual temperature of the air in the pipes and boxes, and no evidence that the piece of tested pine had been subjected to heat a number of times before the test, we consider the contention not well taken.

Two of plaintiff's instructions, given, which referred to defendant's guarantee in connection with the installation were objected to on the ground that the guarantee covered only defects in the furnace itself and there was no evidence of such a defect. The objection overlooks the inclusion in the guarantee of "satisfactory service when installed and used according to our instructions." The furnace was so installed; there is testimony that it was so used and that its service was not satisfactory. Moreover, while plaintiff did not in precise words *request* defendant to make necessary adjustments in the system because of faulty installations, as specifically guaranteed, her complaint to defendant of deficient heat in one room and hot floors in the kitchen and dining room was tantamount to such a request.

Finally, defendant protests the refusal of one of its instructions which proposed to have the jury find for it, if from the evidence the jury believed that the furnace was installed in a manner considered safe by competent men in the same locality who were experienced in such installations. This instruction ignores the difference of opinion among the presumably competent and experi-

enced witnesses from the locality; while some did think the installation safe, others thought it dangerous. The instruction was properly refused.

The judgment is affirmed.

*Affirmed.*